IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAWANYIA SLAYTON, individually and on )
behalf of a class of persons similarly situated, )
)
Plaintiff, )
) 09 C 6977
v. )
) Judge George W. Lindberg
IOWA COLLEGE ACQUISITION CORP., )
a Delaware corporation, d/b/a KAPLAN )
UNIVERSITY, and also d/b/a KAPLAN )
UNIVERSITY GROUP, )
)
Defendant. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dawanyia Slayton filed this putative class action lawsuit against defendant Iowa College Acquisition Corporation, claiming violations of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq*. Before the Court is plaintiff's motion for class certification. For the reasons stated below, the motion is denied.

Defendant sells products and services relating to education and test preparation, under the names "Kaplan University" and "Kaplan University Group." Plaintiff worked for defendant as a Admissions Advisor, a position in which she was paid an hourly wage to communicate with prospective students about defendant's educational services. In her complaint, plaintiff alleges that defendant had a policy of requiring many of its employees, including plaintiff, to work more than forty hours per week, and failing to pay them overtime wages. Plaintiff also alleges that defendant required plaintiff and other employees to perform certain of their duties without

compensation.

Plaintiff seeks to certify two sub-classes. Plaintiff's first proposed sub-class, relating to her IMWL claim, consists of:

> All persons who worked for Defendant as hourly employees in Illinois at any time between September 24, 2006 and the present who did not receive the full amount of overtime wages earned and owed to them.

Her second proposed sub-class, relating to her IWPCA claim, consists of:

> All persons who worked for Defendant as hourly employees in Illinois at any time between September 24, 1999 and the present who did not receive the full amount of hourly wages earned and owed to them.

Plaintiff seeks to certify these classes under Federal Rule of Civil Procedure 23(b)(3).

The Court has broad discretion to determine whether certifying a class is appropriate, and must conduct a "rigorous investigation into the propriety of proceeding as a class." Livingston v. Assocs. Fin., Inc., 339 F.3d 553, 558 (7th Cir. 2003); Keele v. Wexler, 149 F.3d 589, 592 (7th Cir. 1998). As the party seeking class certification, plaintiff bears the burden of establishing that certification is proper. See Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006). In order to prevail on her motion, plaintiff must first show that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Failure to meet any one of these requirements precludes class certification. Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993). If plaintiff satisfies these requirements, she must then show that "the questions of law or fact common to

2

class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In its analysis of plaintiff's class certification motion, the Court "should make whatever factual and legal inquiries are necessary under Rule 23." See Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 676 (7th Cir. 2001); see also Schleicher v. Wendt, No. 09-2154, 2010 WL 3271964, at *5 (7th Cir. Aug. 20, 2010) (stating that "a court may take a peek" at "those aspects of the merits that affect the decisions essential under Rule 23"). However, "a court may not refuse to certify a class on the ground that it thinks the class will eventually lose on the merits." Loeb Indus., Inc. v. Sumitomo Corp., 306 F.3d 469, 480 (7th Cir. 2002).

Defendant does not dispute that the proposed classes are so numerous that joinder is impracticable,[1] or contend that Slayton or her counsel will not fairly and adequately protect the interests of the class. Instead, defendant argues that plaintiff cannot establish commonality and typicality, as required by Rule 23(a). Accordingly, the Court begins by examining these requirements.

To satisfy the commonality requirement of Rule 23, plaintiff must show that the individual class members' claims share a "common nucleus of operative fact," such as by showing that the defendant has "engaged in standardized conduct towards members of the proposed class." See Keele, 149 F.3d at 594. To satisfy Rule 23's typicality requirement, plaintiff must show that her claim "arises from the same event or practice or course of conduct

---

[1] Defendant acknowledges that it has employed approximately 1,200 Admissions Advisors in Illinois since 2004.

that gives rise to the claims of other class members and . . . her claims are based on the same legal theory." See Oshana, 472 F.3d at 514 (quoting Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992)). Although the existence of some factual variations may not defeat typicality, plaintiff's claims must "have the same essential characteristics as the claims of the class at large." Id. (quoting Retired Chicago Police Ass'n, 7 F.3d at 597).

Plaintiff argues that common questions of fact or law include:

- whether defendant required class members to work without pay;

- whether defendant failed to pay class members the full amount of hourly wages for the time they worked;

- whether defendant failed to pay class members overtime wages when they worked more than forty hours per week;

- whether defendant violated the IMWL and IWPCA; and

- whether class members were damaged.

In support of her motion, plaintiff offers her own deposition testimony; the sworn declaration of Montell Wyer, who worked for defendant as an Admissions Advisor during the time that plaintiff was also an Admissions Advisor; and the sworn declaration of defendant's former Admissions Coordinator and Student Support Specialist, Andranee Kency.

The Court begins by examining plaintiff's claim that defendant required its hourly employees to work "off the clock" without paying them for that time. Plaintiff and Wyer both state that they were required to perform certain tasks before their shifts began, such as turning on their computers and opening several computer programs. In addition, Kency states that she sometimes attended meetings in which she heard managers emphasize this requirement to Admissions Advisors. According to plaintiff and Kency, these tasks took ten to fifteen minutes

4

to complete, while Wyer states that he completed these tasks in approximately seven to ten minutes.  Although defendant denies that Admissions Advisors were expected to arrive at work before their scheduled start times, plaintiff has offered consistent evidence that defendant had such a requirement.

However, plaintiff's evidence does not show that defendant addressed the time spent on these tasks in the same way, even between plaintiff and Wyer.  Defendant's Admissions Advisors recorded their own time on their time sheets.  Plaintiff testified that tin oral statements made on more than thirty occasions, her managers discouraged her from recording this time.  By contrast, Wyer stated merely that his supervisors never encouraged, directed, or instructed him to record the time, a significant difference from plaintiff's experience.  Moreover, plaintiff testified that she does not know of any other employees who did not record all of the time that they worked.

To a certain extent, Kency's declaration corroborates plaintiff's testimony.  Kency stated that on several occasions she heard managers tell Admissions Advisors that they would not be paid until they completed these tasks.  However, Kency's statement is short on specifics.  For example, she does not identify the managers or Admissions Advisors, or indicate how many Admissions Advisors were given this warning.  Given this lack of detail, it is difficult to conclude from her statement that defendant had a widespread practice of directing employees not to record time spent working before their scheduled start time.

Plaintiff's evidence relating to her overtime allegations reveals even less common ground.  Plaintiff testified that she did not stay past the end of her scheduled shift unless a manager asked her to do so.  Approximately once a week, plaintiff was required to work thirty to sixty minutes past the end of her shift.  Plaintiff did not record this time on her time sheets,

although she concedes that she was never told she was not allowed to record the time. Plaintiff also worked overtime on Saturdays, but was only paid straight time for that work, rather than time-and-a-half overtime pay.

By contrast, Wyer does not indicate that he was ever asked to work overtime; indeed, he stated that he was discouraged from working overtime. On occasion, Wyer worked unauthorized overtime when he was on a call that continued past the scheduled end of his shift. Wyer was not permitted to record that additional time on his time sheet.

Plaintiff's evidence also reveals inconsistencies in how defendant's managers approved the Admissions Advisors' time. Wyer stated that on one occasion his manager asked him to change his time card because it contained unauthorized overtime. In addition, Kency stated that on several occasions, she observed that managers had reduced the Admissions Advisors' time before approving it. Kency also received several complaints from Admissions Advisors that their hours had been reduced. Plaintiff, by contrast, testified that she was always paid for all of the time she recorded on her time sheets (other than being paid straight time rather than overtime wages for work she did on Saturdays).

The Court finds that plaintiff has not established that defendant engaged in standardized conduct toward members of the proposed class. Nor has she established that her claims have the same essential characteristics as the claims of the class at large. Since plaintiff has not met her burden of establishing commonality and typicality, as required by Rule 23(a), her motion for class certification must be denied. The Court notes that even if plaintiff's evidence supported a finding of commonality, the Court would find that she has not established that common questions predominate over any questions affecting only individual class members, as required by Rule

23(b)(3). See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997) (noting that the predominance requirement of Rule 23(b)(3) is "far more demanding" than Rule 23(a)'s commonality requirement).

**ORDERED:** Plaintiff's motion for class certification [42] is denied.

ENTER:

George W. Lindberg
Senior U.S. District Judge

DATED:     October 5, 2010